IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ROBERT L. GREEN, # K-71866,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 14-cv-1364-NJR |
| ) | |
| **C/O GOODWIN,** ) | |
| **J. BELFORD,** ) | |
| **and C/O BUMGARNER,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff, currently incarcerated at Shawnee Correctional Center ("Shawnee"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, based on events that occurred while he was confined at Pinckneyville Correctional Center ("Pinckneyville").

On June 19, 2013, Plaintiff sued the same Defendant Belford named above, along with several other Pinckneyville officials, because they subjected him to a series of strip searches that he alleges violated his constitutional rights. *Green v. Belford, et al.*, Case No. 13-cv-587-MJR-SCW (that case shall be referred to herein as *Green I*). *Green I* is still pending before this Court. Among other claims, Plaintiff asserts in the instant case that Defendants retaliated against him and harassed him because he pursued the claims in *Green I*, in an effort to deter him from prosecuting that matter.

**The Complaint**

Plaintiff's complaint (Doc. 1) is 59 pages long, most of which consists of copies of

Plaintiff's grievances, letters, administrative responses, and affidavits from fellow inmates.[1] His statement of claim begins on page 50, and includes the following information.

On the evening of June 26, 2013, Defendants Goodwin and Bumgarner singled Plaintiff out because of his sexual orientation and forbade him from showering with the other inmates in his housing unit. Plaintiff was required to shower alone, despite his claim that there are no rules, regulations, or memos specifying that homosexual inmates are not allowed to shower with their fellow prisoners. He complains that the only single showers in the facility are in segregation (Doc. 1, p. 50).

On July 23, 2013, Plaintiff returned from his evening college class along with a group of his classmates and used the showers with those other inmates. After he finished, Defendant Goodwin confronted him and accused him of violating her direct order to shower alone. She threatened that if he did not shower alone in the future, she would issue him a disciplinary ticket and get him kicked out of class and sent to segregation. Plaintiff claims this was the second time he was harassed and threatened in retaliation for the lawsuit he had filed against Defendant Belford and others (*Green I*).

The following evening (July 24, 2013), Defendant Goodwin allowed the group of students who lived on the top deck of their housing area to shower as a group. When she came to the bottom deck, where Plaintiff was housed, she let the inmates out cell by cell, in order to discourage Plaintiff and cut short his shower time.

Plaintiff claims that the above incidents involving Defendants Goodwin and Bumgarner were motivated in part by retaliation for Plaintiff's lawsuit in *Green I*. He states that Defendant Belford started working in Plaintiff's housing unit on or about June 20, 2013, and must have

---

[1] Plaintiff also includes several documents previously filed in *Green I*, which are not necessary to the adjudication of the claims in this case (Doc. 1, pp. 21-25). Plaintiff is advised to refrain from filing unnecessary exhibits such as this in the future.

informed the other Defendants about the pending suit (Doc. 1, pp. 50-51).

The harassment continued on September 11, 2013, when Defendant Goodwin searched Plaintiff's cell and property and threatened to write disciplinary tickets (Doc. 1, p. 51). Following that incident, Defendant Goodwin on a daily basis attempted to get Plaintiff to "react to her tactics" so that she could write him a ticket and send him to segregation. He never responded, and apparently he was not subjected to disciplinary action.

On September 13, 2013, when Plaintiff was leaving the vocational building, Defendant Belford called out to him to ask if he got good time for attending school. Plaintiff answered that he did not, whereupon Defendant Belford said, "Good, because you wasn't gonna get it anyway for filing that bogus ass law suit on me [sic]" (Doc. 1, p. 51). Plaintiff claims this was a threat to his liberty interest as well as further retaliation for bringing *Green I*.

Several months later, on April 3, 2014, Defendant Belford was again assigned to Plaintiff's unit during a morning count. He came to Plaintiff's cell and loudly announced, "the only reason they single cell inmates is either he's a predator or vulnerable [sic]." *Id*. Later on, Defendant Belford told Plaintiff he was taking note of his name and cell number, "so I'll remember where you live and won't say something I'll be sued for later." *Id*. Plaintiff asserts this conversation was a violation of his HIPAA rights, as well as further retaliation, and an attempt to subject Plaintiff to harm from other inmates who overheard the exchange.

Based on these facts, Plaintiff asserts that his rights under the First, Eighth, and Fourteenth Amendments were violated and that the threats made against him were equivalent to "the torts of a 'hate crime'" based on his sexual orientation (Doc. 1, p. 54). He seeks declaratory and injunctive relief, as well as compensatory and punitive damages (Doc. 1, p. 56).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

For the convenience of the Court, Plaintiff's claims shall be designated as follows. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

> **Count 1:** Defendants Goodwin (and Defendant Bumgarner on June 26, 2013, only) singled out Plaintiff for unequal treatment because of his sexual orientation, by preventing him from showering with other inmates, shortening his shower time, and threatening him with disciplinary action in June and July 2013, violating his Fourteenth Amendment right to equal protection;
>
> **Count 2:** Defendant Goodwin and Defendant Bumgarner retaliated against Plaintiff for pursuing legal action in *Green I*, by imposing special showering rules on him; Defendant Goodwin's retaliation included threatening Plaintiff with disciplinary action, searching his cell, and attempting to goad him into a conduct violation, between June and September 2013, in violation of the First Amendment;
>
> **Count 3:** Defendant Belford retaliated against Plaintiff for suing him in *Green I*, by telling Plaintiff he would not be eligible for good conduct time because of that lawsuit, in violation of the First Amendment;
>
> **Count 4:** Defendant Belford retaliated against Plaintiff for suing him in *Green I*, by suggesting to other inmates that Plaintiff was a predator or a vulnerable inmate;
>
> **Count 5:** Defendant Belford's comment that Plaintiff was either a predator or a vulnerable inmate subjected Plaintiff to a risk of harm in violation of the Eighth Amendment;
>
> **Count 6:** Defendant Belford's comment that Plaintiff was either a predator or a vulnerable inmate violated his privacy rights under HIPAA;
>
> **Count 7:** All Defendants' threats and actions against Plaintiff constituted "hate crimes" against him.

Accepting Plaintiff's allegations as true, Plaintiff's claims in **Counts 1, 2, 4 and 5** survive review under § 1915A and shall proceed for further review. However, **Counts 3, 6 and 7** shall be dismissed as discussed below. Furthermore, the claims in Counts 1 and 2 cannot proceed in the same action as Counts 4 and 5, because these groups of claims involve different Defendants and are not legally or factually related to one another. Counts 4 and 5 shall therefore be severed into a separate action, but Plaintiff shall have an opportunity to voluntarily dismiss the newly severed case if he does not wish to proceed on those claims or incur the additional filing fee.

### Count 1 – Equal Protection Claim

Plaintiff's allegations that Defendant Goodwin interfered with his access to the showers on three occasions in June and July 2013, treating him differently from other inmates on account of his sexual orientation, state a cognizable claim for an equal protection violation at this early stage of the litigation. Plaintiff may have a viable claim either as a member of an identifiable class, *see Meriwether v. Faulkner*, 821 F.2d 408, 415 n.7 (7th Cir.), *cert. denied*, 484 U.S. 935 (1987); *Shango v. Jurich,* 681 F.2d 1091, 1104 (7th Cir. 1982), and/or as a class-of-one. *See Swanson v. City of Chetek*, 719 F.3d 780, 783-84 (7th Cir. 2013).

Although Defendant Bumgarner was involved only in the June 26, 2013, incident, Plaintiff's claims against both Defendants are combined in Count 1 for the convenience of the Court. While it is unclear at this stage whether Plaintiff suffered any more than a *de minimis* injury, Count 1 shall proceed for further review against Defendants Goodwin and Bumgarner.

### Count 2 – Retaliation Claims Against Defendant Goodwin and Bumgarner

Prison officials may not retaliate against inmates for engaging in protected First Amendment activity such as pursuing grievances or lawsuits over prison conditions or alleged

mistreatment. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000). Here, Plaintiff has identified the lawsuit (*Green I*) that allegedly triggered the retaliation, and he has also identified several acts of retaliation by Defendant Goodwin; thus he has sufficiently stated a claim against her that merits further review. *See Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009); *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).

As to the single incident involving Defendant Bumgarner (the June 26, 2013, order requiring Plaintiff to shower alone), Plaintiff suggests that this event was the first act of retaliation based on his lawsuit against Defendant Belford, although the complaint is not entirely clear on this point (Doc. 1, p. 50). Giving liberal construction to the complaint, Defendant Bumgarner is therefore included in the retaliation claim under Count 2 at this stage.

**Count 3 – Retaliation Claim Against Defendant Belford (September 2013 incident)**

This claim is based on Defendant Belford's comment to Plaintiff on September 13, 2013, that Plaintiff would not be eligible for good time credit for his school attendance, because of Plaintiff's "bogus" pending lawsuit against Defendant Belford. While this exchange was obviously triggered by the fact that Plaintiff had sued Defendant Belford in *Green I*, Plaintiff's account fails to suggest that Defendant Belford took any adverse action against Plaintiff. *See Bridges*, 557 F.3d at 552 (to state a retaliation claim, plaintiff must have experienced an adverse *action* that would likely deter similar protected activity in the future) (emphasis added).

According to his own description, Plaintiff did not stand to earn any sentence credit at all by attending school. Therefore, Defendant Belford's statement that Plaintiff would not have received any good time from the class because he had filed a "bogus" lawsuit was entirely

speculative and could not have affected Plaintiff's eligibility for earlier release.[2] Despite Plaintiff's characterization of Defendant Belford's comment as a "direct threat to his liberty interest," there simply was no such threat. Mere verbal harassment such as this, that could not possibly lead to adverse consequences to the plaintiff, does not amount to an "adverse action" sufficient to support a claim for unconstitutional retaliation. Accordingly, **Count 3** shall be dismissed with prejudice.

### Count 4 – Retaliation Claim Against Defendant Belford (April 2014 incident)

In comparison with Count 3, Defendant Belford's remark to Plaintiff on April 3, 2014, which implied that Plaintiff was either a predator or a "vulnerable" inmate, may rise to the level of an "adverse action" in retaliation for Plaintiff's protected activity. Defendant Belford made his statement loudly and apparently in the vicinity of other inmates who heard his comment. He thus labeled Plaintiff in the eyes of his fellow prisoners as either a predator or as vulnerable to a potential attack, presumably because of Plaintiff's sexual orientation. This interaction may be viewed as a retaliatory act, beyond mere verbal harassment, because it could lead to potential adverse consequences to Plaintiff. As such, Plaintiff may proceed with the retaliation claim against Defendant Belford in Count 4.

### Count 5 – Eighth Amendment Claim Against Defendant Belford (April 2014 incident)

In addition to constituting a possible retaliatory action, Defendant Belford's statement that Plaintiff was either a predator or vulnerable could have placed Plaintiff in danger of being a target for violence at the hands of other prisoners. Depending on the circumstances, a threat of

---

[2] The Illinois statute does provide for the possible revocation of up to 180 days of good conduct credit if a court specifically finds that a prisoner has filed a frivolous pleading or motion. 730 ILL. COMP. STAT. 5/3-6-3(d). However, Defendant's reference to this possible consequence of Plaintiff's suit does not constitute an act of retaliation, because Defendant has no ability to impose this consequence on Plaintiff. Furthermore, Plaintiff's complaint in *Green I* survived the initial frivolity review by this Court.

harm may support a claim for cruel and unusual punishment where it involves a "credible threat to kill, or to inflict any other physical injury." *Dobbey v. Ill. Dep't of Corr.*, 574 F.3d 443, 446 (7th Cir. 2009). Allegations that a prison officer has provoked or persuaded other inmates to cause harm to a plaintiff may support an inference that the officer attempted to inflict injury on the plaintiff in violation of the Eighth Amendment. *See, e.g.*, *Irving v. Dormire*, 519 F.3d 441, 449 (8th Cir. 2008) (officer's attempt to have other inmates attack plaintiff may violate Eighth Amendment, even where the plaintiff was not actually assaulted).

Further factual development will be necessary in order to determine whether this incident rose to the level of a constitutional claim. Plaintiff may therefore proceed against Defendant Belford on Count 5.

**Count 6 – HIPAA Claim**

Plaintiff appears to believe that Defendant Belford's comment that he was either a predator or "vulnerable" amounted to a disclosure of private health information as defined under HIPAA (the Health Insurance Portability and Accountability Act of 1996). Pub. L. No. 104-191, 110 Stat. 1936 (1996). It is not at all clear that Defendant Belford's statement made any reference to Plaintiff's protected health information. Regardless of whether or not there was an improper disclosure, Plaintiff's HIPAA claim shall be dismissed with prejudice for failure to state a claim upon which relief may be granted. Even where protected health information has been wrongly disclosed, there is no private right of action for a HIPAA violation. *See Carpenter v. Phillips*, 419 F. App'x 658, 659 (7th Cir. 2011) (collecting cases).

**Count 7 - "Hate Crimes"**

Finally, Plaintiff asserts that all of the threats, harassment, and retaliatory actions against him by each Defendant amounted to "hate crimes" based on his sexual orientation (Doc. 1, p.

54). Although he does not elaborate further, it appears that he wishes to bring a state tort law "hate crime" claim along with his federal constitutional claims.

The Illinois Hate Crime statute provides that a person who has suffered "injury to his person or damage to his property as a result of [a] hate crime may bring a civil action for damages, injunction or other appropriate relief." 720 ILL. COMP. STAT. 5/12-7.1(b-10). The statutory definition of a hate crime includes assault, battery, and other enumerated crimes committed "by reason of" the actual or perceived sexual orientation or other listed characteristics of the victim. 720 ILL. COMP. STAT. 5/12-7.1(a); (d). While Plaintiff appears to fall within at least one of the groups protected under this statute, his allegations do not show that any Defendant committed one of the listed crimes. More to the point, none of the allegations suggest that Plaintiff suffered an assault or battery or was the victim of any other criminal act on the part of a Defendant that resulted in physical injury or property damage.[3] For these reasons, he fails to state a claim upon which relief may be granted for a "hate crime" claim under the Illinois statute. **Count 7** shall therefore be dismissed without prejudice.

## Injunctive Relief

Plaintiff's request for injunctive relief, contained in his complaint (Doc. 1, p. 56), has become moot. "[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot." *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004). *See also Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995).

In his complaint, Plaintiff indicates that he has been incarcerated at Shawnee at least

---

[3] Plaintiff describes only verbal harassment, which is a criminal offense under the statute only if the harassment occurred by telephone or electronic communications. Harassment cannot form the basis for a civil action pursuant to the statute in the absence of a physical injury or damage to Plaintiff's property, neither of which is alleged in this case. *See* 720 ILL. COMP. STAT. 5/12-7.1(a); (c).

since June 13, 2014 (Doc. 1, p. 4). Therefore, he would have had no further contact with the Defendants since that time. Only if Plaintiff can show a realistic possibility that he would again be incarcerated at the Pinckneyville Correctional Center, where Defendants are employed, would it be proper for the Court to consider injunctive relief. *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (citing *Ortiz v. Downey,* 561 F.3d 664, 668 (7th Cir. 2009)). Accordingly, Plaintiff's request for injunctive relief shall not be considered further at this time.

**Severance of Counts 4 and 5**

In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *George,* 507 F.3d at 607, (citing 28 U.S.C. § 1915(b), (g)). Plaintiff's complaint contains two sets of unrelated claims against different Defendants: Counts 1 and 2 against Defendants Goodwin and Bumgarner, and Counts 4 and 5 against Defendant Belford. The fact that the retaliation claims in Counts 2 and 4 are alleged to have been triggered by the same event (Plaintiff's lawsuit in *Green I*) does not sufficiently link these claims in light of *George*. The purported acts of retaliation were distinct from one another, took place on different dates, and were committed by different Defendants; thus severance is appropriate.

Consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever **Counts 4 and 5** of Plaintiff's complaint and open a new case with a newly-assigned case number for those claims against Defendant Belford. Plaintiff shall have an opportunity to voluntarily dismiss the newly severed case, however, if he does not wish to proceed on those claims or incur the additional filing fee.

**Pending Motions**

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to United States Magistrate Judge Wilkerson for further consideration, as to Counts 1 and 2, which shall remain in this action.

The motion for service of process at government expense (Doc. 4) shall be **GRANTED in part AND DENIED in part.** Service shall be ordered below on the two Defendants who remain in this action. No service shall be ordered in the severed case until after Plaintiff notifies the Court regarding his intentions to pursue or withdraw those claims.

**Disposition**

**COUNTS 3 and 6** are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. **COUNT 7** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS HEREBY ORDERED** that Plaintiff's retaliation and Eighth Amendment claims against Defendant Belford (**COUNTS 4 and 5**), which are unrelated to the claims in Counts 1 and 2, are **SEVERED** into a new case. That new case shall be: Claims against **DEFENDANT BELFORD** for retaliation and cruel and unusual punishment.

In the new case, the Clerk is **DIRECTED** to file the following documents:

    (1)    This Memorandum and Order
    (2)    The original Complaint (Doc. 1)
    (3)    Plaintiff's motion to proceed *in forma pauperis* (Doc. 2)

Plaintiff is **ADVISED** that if, for any reason, he does not wish to proceed with the newly-opened case, he must notify the Court in writing within 35 days (**on or before February 18, 2015**). Unless Plaintiff notifies the Court that he does not wish to pursue the newly opened action, he **will be responsible for an additional $350.00 filing fee** in the new case. Service

shall not be ordered on Defendant Belford until after the deadline for Plaintiff's response.

**IT IS FURTHER ORDERED** that the *only claims remaining in this action are COUNT 1 and COUNT 2 against Defendants GOODWIN and BUMGARNER*, for equal protection violations and retaliation. This case shall now be captioned as: **ROBERT L. GREEN, Plaintiff, vs. C/O GOODWIN and C/O BUMGARNER, Defendants.**

**IT IS FURTHER ORDERED** that Defendant **J. BELFORD** is **TERMINATED** from *this* action with prejudice.

As to **COUNTS 1 and 2**, which remain in the instant case, the Clerk of Court shall prepare for Defendants **GOODWIN** and **BUMGARNER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is

entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk

of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  January 14, 2015**

_____
NANCY J. ROSENSTENGEL
United States District Judge